CULBREATH, APPELLANT, *v.* GOLDING ENTERPRISES, L.L.C.; U.S. FOUR, INC. ET AL., APPELLEES.

[Cite as *Culbreath v. Golding Ents., L.L.C.,* 114 Ohio St.3d 357, 2007-Ohio-4278.]

(No. 2006–1302—Submitted April 17, 2007—Decided September 5, 2007.)

O'CONNOR, J.

{¶ 1} This appeal requires us to determine two issues. First, we decide whether the recipient of an unsolicited facsimile advertisement has a private cause of action under the Telephone Consumer Protection Act ("TCPA"), Section 227(b), Title 47, U.S.Code for violations of Section 68.318(d), Title 47, C.F.R. Second, we address whether the Ohio Consumer Sales Practices Act ("OCSPA"), R.C. Chapter 1345, applies to the act of sending of an unsolicited facsimile advertisement received by a business entity.

{¶ 2} For the reasons that follow, we hold that Section 227(b), Title 47, U.S.Code does not provide a private right of action for violations of Section 68.318(d), Title 47, C.F.R. We further find that there is no OCSPA violation because no "individual," i.e., natural person, was involved in the transaction, and therefore, no "consumer transaction" occurred for the purposes of R.C. 1345.01(A). Furthermore, the mere sending to and receipt by an individual of an unsolicited fax advertisement, where there is no evidence that the fax is deceptive, unfair, or unconscionable, is not a violation of the OCSPA. We affirm the judgment of the court of appeals in toto.

## I. Background

{¶ 3} Appellees U.S. Four, Inc. and W.D. Equipment Rental, Inc., own and operate an "adult gentlemen's" club known as Dockside Dolls. As of the time in question, appellee John Basinger was operations manager for the club, and appellee Josh Wellington was assistant manager.

{¶ 4} On May 4, 2004, the law firm of Culbreath & Associates, L.P.A., received an unsolicited fax from Dockside Dolls on the firm's fax machine. The firm owned the fax machine, and the machine's number was listed in the 2004 Columbus Bar Directory as the firm's fax number.

{¶ 5} The fax, which sought to entice large groups of men to come to the club, served as an invitation for free admission between 11:30 a.m. and 7:00 p.m. Monday through Saturday for "you and your co-workers." The fax, however, failed to identify (1) the transmitter of the fax, (2) the date and time it was sent, and (3) the number from which the fax was delivered.

{¶ 6} Appellant, Stanlee E. Culbreath, the firm's only practitioner, filed an eight-count complaint with the Franklin County Court of Common Pleas. The complaint alleged that the unsolicited fax violated Section 227(b)(1) of the TCPA. In addition, Culbreath sought damages for violations of Section 227(d) of the TCPA and 68.318(d), Title 47, C.F.R., for the fax's technical defects (i.e., its lack of identifying information). The remaining counts sought damages under the OCSPA for each alleged TCPA violation. Culbreath prayed for treble damages for the TCPA violations and statutory damages along with attorney fees under the OCSPA.

{¶ 7} The parties filed cross-motions for summary judgment. The trial court granted summary judgment in Culbreath's favor and against U.S. Four, W.D. Equipment, Basinger, and Wellington on his first TCPA cause of action, which alleged the unlawful transmission of an unsolicited fax. The trial court, however, granted summary judgment to U.S. Four, W.D. Equipment, Basinger, and Wellington as to the remaining seven counts of the complaint.

{¶ 8} Culbreath appealed to the Tenth District Court of Appeals, which affirmed the judgment of the trial court. In particular, the appellate court held that Culbreath could not recover damages for violations of Section 227(d)(1)(B), Title 47, U.S.Code. *Culbreath v. Golding Ents., L.L.C.*, 10th Dist. No. 05AP–1230, 2006-Ohio-2606, 2006 WL 1431408, at ¶ 23. Moreover, the court found that because there was no dispute that the fax was sent to Culbreath's law firm, the OCSPA did not apply. Id. at ¶ 27.

## II. Analysis

### A. Private Rights of Action under the TCPA

{¶ 9} Neither party disputes that the fax at issue in this case was an unsolicited fax sent in violation of Section 227(b)(1)(C). The question, as posed above, is whether Culbreath can recover for the fax's technical defects, i.e., its lack of identifying information in violation of Section 227(d)(1)(B).

{¶ 10} In 1991, Congress enacted the TCPA, codified at Section 227, Title 47, U.S.Code. Pub.L. No. 102–243, 105 Stat. 2394. In passing the bill, Congress found that the pervasive and aggressive tactics of telemarketers, including those who send unsolicited faxes, a.k.a. "junk faxes," were a nuisance and an intrusion on privacy. Pub.L. No. 102–243, Section 2. The TCPA, therefore, contains provisions to deter the transmission of unsolicited faxes.

{¶ 11} Perhaps the primary deterrent to sending junk faxes is found in Section 227(b), Title 47, U.S.Code, making it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." Congress specifically created a private right of action, allowing individuals to bring suit in state courts for their receipt of a junk fax. Section 227(b)(3).[1] See also *Klein v. Vision Lab Telecommunications, Inc.* (S.D.N.Y.2005), 399 F.Supp.2d 528, 539–540.

---

1. {¶ a} Section 227(b)(3) provides:

{¶ b} "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

{¶ c} "(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

{¶ d} "(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

{¶ 12} In addition, Congress made it unlawful for persons to use a fax machine to send an unsolicited advertisement that does not clearly display "the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual." Section 227(d)(1)(B), Title 47, U.S.Code. Germane to the discussion at hand is that, unlike its counterparts in subsections 227(b) and 227(c), subsection 227(d) does not provide a private cause of action for its violations. See 227(b)(3) and (c)(5), expressly authorizing a private right of action.

{¶ 13} The fact that Congress expressly authorized private causes of action in two subsections of the statute, but not in subsection 227(d), makes it clear that if Congress had wanted to enable individuals to bring suit for technical violations, it would have said so. Although there is no private right of action under subsection 227(d), the violation of the subsection is not without consequence. The means of redress for technical violations lie in the hands of the attorney general of each state. See subsection 227(f)(1) (persons who violate the TCPA and the regulations promulgated under it can be sued by a state's attorney general in federal court).

{¶ 14} Notwithstanding the plain text of the statute, Culbreath attempts to skirt its provisions by relying on a Federal Communications Commission regulation, Section 68.318(d), Title 47, C.F.R. The regulation makes it "unlawful for any person * * * to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks [on the transmitted page] the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual." Culbreath contends that this regulation was promulgated under Section 227(b), Title 47, U.S.Code, thereby providing him with separate causes of action via Section 227(b)(3) for each technical violation.

{¶ 15} For purposes of argument, we will assume Culbreath's position that the regulation was in fact promulgated under Section 227(b). In such a case, this court must consider whether Section 68.318(d) is a proper administrative construction of the statute. See *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694. As we have long observed, "an administrative rule cannot add or subtract from the

---

{¶ e} "(C) both such actions.

{¶ f} "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

legislative enactment." *Amoco Oil Co. v. Petroleum Underground Storage Tank Release Comp. Bd.* (2000), 89 Ohio St.3d 477, 484, 733 N.E.2d 592.

{¶ 16} Applying these principles of interpretation to the regulation at hand and the TCPA, it becomes apparent that adopting Culbreath's view would grant private individuals a cause of action that Congress has not authorized. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval* (2001), 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517. As noted above, Section 227(d) does not provide for a private cause of action. Thus, the discretion to bring suit for its violations lies with the attorney general of each state. There is nothing in the regulation or the statute to indicate that Congress intended private individuals to have the same rights as the state attorneys general. Culbreath, therefore, cannot maintain an action based solely on a violation of the regulation.

{¶ 17} One of the few relevant cases Culbreath cites in support of his proposition is *Schraut v. Rocky Mountain Reclamation* (Dec. 18, 2001), St. Louis (Mo.) Circuit Court No. 01AC–002848 O CV. In determining that there was a private right of action for violations of Section 68.318(d), Title 47, C.F.R., the *Schraut* court rationalized that Section 227(b)(3) grants a right of action "based on a violation of * * * regulations prescribed under this subsection." Moreover, the *Schraut* court held that each separate violation of the statute or regulation gives rise to a separate right of recovery. The court reasoned that since the TCPA is a remedial statute, allowing each violation to be actionable would serve as a greater deterrent.

{¶ 18} Unsolicited faxes, however, are typically not transmitted to just one recipient. As in this case, there are often a multitude of recipients and, thus, a multitude of potential plaintiffs, each of whom could recover as much as $1,500 for a violation of Section 227(b)(3) of the TCPA.[2] To allow each of those individuals, however, to multiply that award three times over would create a windfall not contemplated by the statutory scheme. Cf. *Klein*, 399 F.Supp.2d at 540. Moreover, the attorney general could bring a lawsuit for not only sending the fax but for the technical defects as well. The prospect of an untold number of plaintiffs bringing suit, or joining a putative class action suit, combined with the possibility of a federal court action being initiated by a state attorney general for violations of subsection 227(d), serves as a significant deterrent in and of itself without adding a dubious private cause of action for each violation.[3]

---

2. At oral argument, counsel for appellees said there may have been 100 or so entities that received the fax.

3. Pursuant to Section 227(f)(2), Title 47, U.S.Code, federal courts have exclusive jurisdiction over suits brought by the states.

{¶ 19} We reject the *Schraut* holding for the simple reason that it is based on a faulty premise, i.e., that Section 68.318(d), Title 47, C.F.R. gives rise to a private cause of action via Section 227(b)(3) of the TCPA. As we have concluded above, Congress clearly did not intend to create a private right of action for any violation of the identification requirements of Section 227(d)(1)(B) of the TCPA.

{¶ 20} Where Congress has not explicitly authorized a private right of action, this court cannot create one by judicial fiat. *Alexander v. Sandoval*, 532 U.S. at 286, 121 S.Ct. 1511, 149 L.Ed.2d 517. If adopted, Culbreath's construction of the regulations would expand Section 227(b), Title 47, U.S.Code in a manner not explicitly authorized. We, therefore, hold that Section 227(b)(3), Title 47, U.S.Code does not provide a private right of action for violations of Section 68.318(d), Title 47, C.F.R.

## B. Culbreath's Claims under the OCSPA

{¶ 21} We now turn our attention to Culbreath's claims brought under the OCSPA. Specifically, Culbreath contends that he is entitled to damages under R.C. 1345.09 because the fax violates the OCSPA. We must first decide, however, whether the transmission of an unsolicited fax to a business entity is a consumer transaction. Again, in deciding the issue, we look to the text of the act.

{¶ 22} Codified in R.C. Chapter 1345, the OCSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). Although "individual" is not defined in this section, it is among several other classifications, including partnership and association, which are included in the definition of "person" in R.C. 1345.01(B): " 'Person' includes an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative, or other legal entity." In the absence of a statutory definition, we must apply the ordinary and common understanding of the term "individual." R.C. 1.42.

{¶ 23} Applying this principle, an "individual" is commonly understood to mean a single person or human being, in contrast to a group or institution. Webster's Third New International Dictionary (1986) 1152. In fact, several sections of the Revised Code use this definition in defining an "individual" as a "natural person." See R.C. 1347.12(A)(5), 1349.19(A)(5), 3904.01(I), 5733.40(E), and 5747.01(G).

{¶ 24} As we have previously held, " 'A consumer transaction typically involves a natural person * * *.' " *Heritage Hills, Ltd. v. Deacon* (1990), 49 Ohio St.3d 80, 82, 551 N.E.2d 125, quoting 7A Uniform Laws Annotated, Business and Financial Laws (Master Ed.1985), Uniform Consumer Sales Practices Act, 233, Official Comment to Section 2(1), at 235. Moreover, if "individual" were intended

to have the same meaning as the business entities listed under R.C. 1345.01(B), then the legislature could have expressly used the term "person" in defining a consumer transaction under R.C. 1345.01(A). Instead, the General Assembly, having clarified that a "person" could be an individual or a business entity, instead chose the word "individual" to define a consumer transaction.

{¶ 25} The proposition that a consumer transaction is limited to natural persons gains further credence when it is taken in context with the rest of R.C. 1345.01(A). Consumer transactions are expressly restricted to transactions "for purposes that are primarily *personal, family, or household.*" (Emphasis added.) None of these purposes apply to a business. Instead, they all relate to matters unique to natural persons.

{¶ 26} Moreover, R.C. 1345.03 provides further illustration of the OCSPA's inapplicability to businesses or similar entities. That statute lists several factors to be considered in determining whether an unconscionable trade practice has occurred. R.C. 1345.03(B)(1) requires the court to consider whether the consumer has been taken advantage of because of "physical or mental infirmities, ignorance, illiteracy, or inability to understand the language." These criteria relate only to human beings and have no relevance to a business entity. Therefore, we hold that, as used in R.C. 1345.01(A), "individual" means "natural person."

{¶ 27} The foregoing discussion is dispositive of Culbreath's OCSPA claims. There is no dispute that the fax was sent to Culbreath's law firm; thus, there is no consumer transaction because no individual was involved.

{¶ 28} We have declined to recognize Culbreath's right to maintain an action under the OCSPA based upon the fact that the law firm is not an "individual" for purposes of the act. The claim also fails unless the fax itself is a violation of the OCSPA. R.C. 1345.09 grants a private cause of action to a consumer when a supplier[4] commits an act prohibited by R.C. 1345.02 (unfair or deceptive practices) or 1345.03 (unconscionable acts or practices).[5]

{¶ 29} Included among those practices defined by R.C. 1345.02 as unfair or deceptive are representations that the subject of a transaction has approval, performance characteristics, or benefits that it does not have; the subject is of a particular quality or standard that it is not; the subject is new when it is not; or the subject will be supplied in a greater quantity than the supplier intends. Acts or practices defined as unconscionable include knowingly taking advantage of a

---

4. "Supplier" is defined by R.C. 1345.01(C) as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions."

5. R.C. 1345.09(A) also provides a cause of action for a violation of R.C. 1345.031 (an unconscionable act or practice in connection with a residential mortgage transaction).

consumer's ignorance or infirmities, charging an exorbitant price, making misleading statements upon which the consumer is likely to rely, and refusing to grant a refund without justification. R.C. 1345.03(B)(1) through (7).

{¶ 30} Although we note that "solicitation" is included in the definition of a consumer transaction in R.C. 1345.01, there is nothing in R.C. 1345.02 or 1345.03 to support a finding that the sending to and receipt by an individual of an unsolicited fax, when it is not established that the fax is unfair, deceptive, or unconscionable, is a violation of the OCSPA. The appellees' fax was for free admission to their club. There is nothing in the record to support a finding that the fax was unfair, deceptive, or unconscionable.

{¶ 31} Our interpretation today does not frustrate the purpose of the OCSPA, as the decision in no way limits the rights of individual consumers to bring claims pursuant to R.C. Chapter 1345 based on the receipt of unsolicited facsimile advertisements. In order to prevail on those claims, however, plaintiffs do have to make a showing that the unsolicited fax is part of a consumer transaction that is a deceptive, unfair, or unconscionable practice. Nor does our holding foreclose a business entity from seeking relief through the appropriate channels with the Office of the Attorney General or by seeking damages under the common law.[6]

## Conclusion

{¶ 32} We are mindful of the annoyance caused by an unsolicited fax, and we certainly can appreciate why Congress said "enough is enough" when it adopted the TCPA. Congress, however, stopped short of giving private citizens the right to bring suit for technical violations of the TCPA, and we are not to create a private right of action where Congress has not expressly authorized one. Finally, there is nothing in the OCSPA that supports a conclusion that a business entity has standing to bring suit for receiving a junk fax that is not shown to be unfair, deceptive, or unconscionable.

Judgment affirmed.

MOYER, C.J., LUNDBERG STRATTON, O'DONNELL, LANZINGER and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

Ferron & Associates, John W. Ferron, and Lisa A. Wafer, for appellant.

---

6. For example, R.C. 1345.07 authorizes the attorney general to bring suit against a supplier who engages in practices violating the OCSPA.

Lavelle, Jurca & Lashuk, L.L.C., Jeffrey J. Jurca, and Beth Anne Lashuk, for appellees U.S. Four, Inc., W.D. Equipment Rental, Inc., John Basinger, and Josh Wellington.

Joseph R. Compoli Jr. and James R. Goodluck, urging reversal for amicus curiae, Telephone Consumer Rights Bar Association of Ohio.