DECISION *Page 2 
{¶ 1} Plaintiff-appellant, Harriet Radvansky, appeals from the trial court's entry granting defendant-appellee Western Southern Financial Group's motion for sanctions under R.C. 2323.51 and Civ. R. 11. She raises two assignments of error for our review.
 Radvansky's Lawsuit {¶ 2} On June 6, 2006, Radvansky filed a class-action complaint against Western Southern in Cuyahoga County, alleging that Western Southern had violated the Telephone Consumer Protection Act of 1991, Section 227, Title 47, U.S. Code ("TCPA") and the Ohio Consumer Sales Practices Act, R.C. 1345.02 ("OCSPA"). Radvansky's complaint alleged that on June 12, 2004, she had received an unsolicited advertisement on her telephone facsimile machine. She sought to certify a class of "all persons and entities within the 216 and 440 area codes to whom Western Southern had transmitted one or more advertisements by fax at anytime during the years 2003 through 2005, without obtaining prior express permission or invitation to do so."
 {¶ 3} A copy of the offending facsimile, entitled Fax News, was attached to the complaint. The fax contained short stories such as "Toilet Kidnapping, Mary Poppins Stunt Fails, Pets Gravestone in Rare Carving, Medical Advice, and Constructive Criticism," jokes, and advertisements for an apartment complex, a weight-loss program, and the Western Southern Financial Group Master Women's Open, an ATP Masters Series tennis event. The fax, however, did not contain a telephone number, nor was it addressed to a particular person or entity. *Page 3 
 Western Southern's Venue Motion and Related Discovery {¶ 4} On August 30, 2006, Western Southern moved, pursuant to Civ. R. 3(C)(1) and 12(B)(3), to transfer the case to Hamilton County on the basis that the fax had been sent to and received at a 513 number in Hamilton County and that Western Southern was likewise located in Hamilton County. The company further asked that the parties engage in limited discovery for purposes of determining this venue issue. On September 9, 2006, Western Southern, after having been granted two extensions by the trial court, filed its answer to the complaint.
 {¶ 5} The trial court granted Western Southern's request for limited discovery, and it served Radvansky with its first set of interrogatories and request for production of documents. In her responses to the interrogatories, Radvansky stated that the fax had been sent to the Cincinnati office number for the Franklyn W. Kirk Company, a family-held corporation of which Radvanksy was an owner. The Cincinnati office had been closed since February 29, 1996, but the company had kept in place a forwarding service with the phone company. As a result, the fax had been automatically forwarded to Franklyn W. Kirk's Berea, Ohio, office, where Radvansky had removed the fax from the company's fax machine.
 Radvansky's Lawsuit is Transferred to Hamilton County {¶ 6} On September 15, 2006, Radvansky voluntarily dismissed her class-action claim. On October 12, 2006, the Cuyahoga County Common Pleas Court granted Western Southern's venue motion without any opinion or explanation and transferred the case to Hamilton County. Shortly thereafter, Radvansky moved for a protective order to bar her deposition in Hamilton County. On December 13, 2006, the trial court held a scheduling conference. Radvansky's counsel did not appear, but *Page 4 
participated by telephone. Two days later, the trial court overruled Radvansky's motion for a protective order.
 Western Southern's Motion for Summary Judgment and for Sanctions {¶ 7} On January 12, 2007, Western Southern moved for summary judgment on Radvansky's claims on the basis that the Franklyn W. Kirk Co. — not Radvansky — had received the fax and that Radvansky, therefore, lacked standing to bring her TCPA and OCSPA claims. Western Southern also argued that even if Radvansky had standing to bring the claims, it had not sent "the allegedly offending fax under the statute"; rather Cincinnati Fax Publishing, Inc., had created and sent the fax. Western Southern thus argued that its only connection to the fax was that its name appeared in the tennis tournament's advertisement in the fax.
 {¶ 8} Seven days later, Western Southern moved for sanctions against Radvansky and her counsel under Civ. R. 11 and R.C. 2323.51(A)(2)(iii) and (iv) "for filing a complaint * * * based upon allegations known by the [p]laintiff and [p]laintiff's counsel to be false." Western 
Southern argued that Radvansky and her counsel had made false allegations concerning Radvansky's representative nature of the class involving area codes 216 and 440 without doing an investigation as to whether such a class existed. It contended that they had failed to reveal that the fax had been received at a 513 number, claiming instead that it had been received at a 216 or 440 number. Radvansky had then dismissed her class claim after Western Southern had incurred significant costs in preparing to defend against the class action. Western Southern also argued that Radvansky and her counsel had falsely alleged that her fax machine, toner, and electricity were used by Western Southern *Page 5 
when the fax had actually been received on her company's fax machine. Thus, Western Southern asserted that Radvansky and her counsel were attempting to claim an injury that would have been suffered by the company, not by Radvansky. Attached to the motion were Radvansky's responses to Western Southern's first set of interrogatories and request for production of documents, as well as an affidavit from Western Southern's Cleveland counsel relating the following August 14, 2006, voice-mail message from Radvansky's counsel:
 {¶ 9} "Hello Mark. This is Joseph Compoli. I am calling you from Cleveland, Ohio. It's on Harriet Radvansky v. Western Southern Financial Group. I don't know what the affidavit from Cincinnati Fax Publishing has to do with anything. They faxed to [the] 513 area code. Radvanksy and their business used to maintain a Cincinnati office. They still do business in Cincinnati. So they've kept their 513 fax number in order to continue to do business in Cincinnati. That was the fax number that they received the unsolicited fax on. So I don't see how that exonerates Western Southern Financial Group. Call me at * * *. Thank you."
 Radvansky's Dismissal of the Lawsuit and Opposition to Sanctions {¶ 10} On January 25, 2007, Radvansky voluntarily dismissed her lawsuit against Western Southern pursuant to Civ. R. 41(B)(1). On February 14, 2007, Western Southern filed a supplemental memorandum requesting that the trial court retain jurisdiction over its motion for sanctions. On February 26, 2007, the parties filed a stipulation allowing Radvansky to file a response to the motion for sanctions on or before March 5, 2007.
 {¶ 11} On March 5, 2007, Radvansky filed a memorandum opposing Western Southern's motion for sanctions. In the memorandum, Radvansky argued that she *Page 6 
had not made false allegations in her complaint; that she had standing to pursue her individual and class claims under the TCPA and the OCSPA; and that her claims were not frivolous. Attached to the motion was a sworn affidavit in which Radvansky averred, among other things, that on June 12, 2004, she had received an advertisement for Western Southern Financial Group through the fax machine at the main office of the Franklyn W. Kirk Company, which was located in Berea, Ohio. On March 12, 2007, Western Southern filed a reply memorandum.
 {¶ 12} On March 23, 2007, Radvansky filed a motion to strike the affidavit of Western Southern's counsel attached to its motion for sanctions. Three days later, she filed another motion to strike Western Southern's reply memorandum regarding sanctions. On March 29, 2007, Western Southern filed a response to Radvansky's motion to strike its attorney's affidavit.
 {¶ 13} On April 27, 2007, Radvansky filed a motion to continue the hearing on sanctions because her counsel had conflicting obligations in Cuyahoga County. The trial court contacted Radvansky's counsel and continued the hearing to May 30, 2007, to accommodate his schedule.
 {¶ 14} On May 22, 2007, Radvansky refiled her complaint in Cuyahoga County against Fax Daily Inc., the publisher of Fax News, and Western Southern. She also named the Franklyn W. Kirk Company as a plaintiff in the lawsuit. On May 25, 2007, Radvansky filed a motion to transfer the Hamilton County case to Cuyahoga County, as well as a motion to stay the sanctions hearing. The trial court denied both motions on May 30, 2007, before proceeding with the sanctions hearing. *Page 7 
 The Sanctions Hearing {¶ 15} The trial court noted on the record that neither Radvansky nor her counsel had appeared for the hearing and reiterated the procedural posture of the case. Counsel for Western Southern then presented oral argument on its motion for sanctions. At the conclusion of the argument, the trial court stated that based upon its review of "all the filings in this case and the interrogatories [and] the discovery that has been filed, [the court] finds that the motion for sanctions is well taken." But the court then stated that because the attorney fees requested by Western Southern were in an unliquidated amount, it would hold a separate hearing on the issue of attorney fees. On May 31, 2007, the trial court journalized an entry granting Western Southern's motion for sanctions without any opinion or explanation.
 Award of Attorney Fees {¶ 16} On June 14, 2007, the trial court conducted a hearing to determine the amount of attorney fees to award as sanctions. Western Southern provided testimony from Joseph J. Braun, a partner at Strauss Troy, concerning the reasonableness of the fees. Radvansky's counsel appeared at the hearing, cross-examined Braun, and argued that the bulk of the fees was related to the legal merits of her individual claims instead of the class-action claim. At the conclusion of the hearing, the trial court stated that it would take the matter under advisement.
 {¶ 17} The next day, the trial court journalized an entry awarding Western Southern $24,144.99 in attorney fees. The entry, however, did not specify if the sanctions had been awarded against Radvansky, her counsel, or both jointly and severally. On June 26, 2007, Western 
Southern filed a motion requesting that the *Page 8 
court enter a nunc pro tunc entry clarifying whom the sanctions had been awarded against.
 {¶ 18} Radvansky filed a notice of appeal on June 29, 2007. On July 3, 2007, the trial court entered a nunc pro tunc entry making Radvansky and her counsel, Joseph Compoli, jointly and severally liable for the fees in the amount of $24,144.99.
 Were Sanctions Appropriate? {¶ 19} In her first assignment of error, Radvansky argues that the trial court erred in granting Western Southern's motion for sanctions under R.C. 2323.51 and Civ. R. 11. Radvansky contends that the trial court erred in imposing sanctions under R.C. 2323.51 because her TCPA, OCSPA, and class-action claims were warranted under the law, and because there were appropriate evidentiary grounds to support them. She also contends that the Civ. R. 11 sanctions against her counsel were improper because there was no evidence of willfulness.
 R.C. 2323.51 {¶ 20} "R.C. 2323.51 allows the trial court to award fees to any party adversely affected by frivolous conduct. [Citation omitted.] The statute defines frivolous conduct as conduct by a party to a civil action that (1) serves merely to harass or maliciously injure another party to the action or is for another improper purpose, such as causing unnecessary delay or a needless increase in the cost of litigation; (2) is not warranted under existing law and cannot be supported by a good faith argument for a modification or establishment of new law; (3) consists of allegations or other factual contentions that have no evidentiary support; or (4) consists of denials or factual contentions that are not warranted by the evidence. [Citation omitted.] The standard of review applicable to the imposition of sanctions for *Page 9 
frivolous conduct under R.C. 2323.51 depends on whether there are questions of law or of fact, or whether there are mixed questions of law and fact. [Citation omitted.] With respect to purely legal questions, an appellate court employs a de novo standard of review. [Citation omitted.] On the other hand, an appellate court should not disturb a trial court's findings of fact if the record contains competent credible evidence to support the findings. [Citation omitted.] Finally, an appellate court reviews under an abuse of discretion standard a trial court's decision to award any fees on the basis that frivolous conduct has adversely affected a party. [Citation omitted.]"[1]
 Civil Rule 11 {¶ 21} A court may also award attorney fees if a party willfully contravenes the purposes behind Civ. R. 11.[2] The rule requires attorneys to sign all pleadings, motions, or other documents to certify that "the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and it is not interposed for delay."[3]
Thus, Civ. R. 11 authorizes a trial court to award attorney fees if a party or its attorney willfully signs a document that they know is not supported by good ground.[4]
 {¶ 22} This court has further held that "`Civ. R.11 applies a subjective bad faith standard.'"[5] Thus, it is an attorney's "actual intent or belief that [i]s relevant to the *Page 10 
determination of willfulness."[6] A trial court's decision to impose Civ. R. 11 sanctions, moreover, cannot be reversed absent an abuse of discretion.[7]
 {¶ 23} In this case, the trial court's entry awarding sanctions provided no reasoning or explanation. We agree, however, with Radvansky that Western and Southern's motion for sanctions was based upon two main arguments: (1) her complaint was based upon false allegations; and (2) she lacked standing to bring her claims.
 Radvansky's Complaint Was Not Based on False Allegations {¶ 24} Radvansky first argues that the trial court erred in awarding sanctions under R.C. 2323.51(A)(2)(a)(iii) and (iv) when there was evidence in the record to support the factual allegations in her complaint. We agree.
 {¶ 25} In her complaint, Radvansky stated that she had received the fax. In her responses to the interrogatories, Radvansky stated that the fax had been sent to a 513 number and that the fax had then been forwarded to her company's Berea office, where she had physically pulled the fax from the fax machine. Radvansky, likewise, attached an affidavit to her memorandum opposing sanctions in which she again averred that she had received the fax at her company. Because Radvansky and her counsel had consistently maintained that she had received the fax and had presented evidentiary support for this allegation in her complaint, her case was factually distinguishable from those cases cited by Western Southern in its motion for sanctions that had upheld an award of sanctions based upon false allegations in a *Page 11 
complaint.[8] Consequently, we agree with Radvansky that the trial court erred in awarding sanctions under this provision of the statute.
 Radvansky's Complaint Was Not Legally Frivolous {¶ 26} Radvansky also argues that Western Southern was not entitled to sanctions under R.C. 2323.51(A)(2)(a)(ii) on the basis that her claims were frivolous. The thrust of Western Southern's argument before the trial court was that Radvansky had lacked standing to pursue her claims because the fax had been received at the office of Franklyn W. Kirk Company. Based upon our review of the record and the applicable case law, we agree with Radvansky that it was arguable that she had standing to pursue her claims under the TCPA and the OCSPA, and, therefore, her claims were not legally groundless.
 {¶ 27} The TCPA provides that it is "unlawful for any person within the United States * * * to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement."[9]
The statute defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission."[10] The TCPA further provides that "a person or entity" may bring a private cause of action to enjoin violations and "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater[.]"[11] "Ohio courts have found *Page 12 
that a violation of the TCPA also results in a violation of R.C. 1345.02
of the Ohio CSPA."[12]
 {¶ 28} At the time that Radvanksy's suit was filed, there was no binding legal precedent on standing related to unsolicited fax advertisements under the TCPA[13] or the OCSPA.[14] Radvansky, furthermore, made a good-faith argument that she had standing to pursue a claim under the TCPA based on the facts that the fax had not been addressed to a particular person or entity, [15] that she had presented an uncontested affidavit averring that she was the person who had actually pulled the fax from the company's fax machine; and that there was no language in the TCPA or in the legislative history of the TCPA that limited standing to the person or entity that owned the fax machine or paid for the telephone line for the fax machine.[16] Thus, we cannot conclude that her claims under the TCPA or the OCSPA were so frivolous that no reasonable lawyer would have argued them.
 Civil Rule 11 Sanctions Were Also Inappropriate {¶ 29} Because we have concluded that Radvansky's claims had evidentiary support as well as an arguable legal basis, the trial court abused its discretion in holding that Radvansky and her counsel had willfully violated Civ. R. 11 by filing a groundless complaint. Furthermore, we cannot uphold the award of sanctions on the basis that Radvanksy's pursuit of these claims and her vigorous defense of them by *Page 13 
subsequent motion practice were intended merely to harass or maliciously injure Western Southern. As a result, we sustain Radvansky's first assignment of error.
 {¶ 30} Due to our resolution of Radvansky's first assignment of error, we must reverse the trial court's judgment. Because we are reversing the trial court's judgment with respect to the entire award of attorney fees, we need not consider whether Radvansky's counsel was given proper notice of the action against him. And Radvansky's second assignment of error, in which she argues that the trial court was without jurisdiction to enter the nunc pro tunc entry awarding the attorney fees jointly and severally against her and her counsel, is now moot. We, therefore, reverse the judgment of the trial court and enter final judgment for Radvansky.
Judgment accordingly.
HILDEBRANDT, P.J., and CUNNINGHAM, J., concur.
[1] Gearheart v. Cooper, 1st Dist. Nos. C-050532 and C-060170,2007-Ohio-25, at ¶ 25.
[2] Donaldson v. Todd, 174 Ohio App.3d 117, 2007-Ohio-6504,881 N.E.2d 280, at ¶ 8.
[3] Civ. R. 11.
[4] Donaldson, supra, at ¶ 8; Stevens v. Kiraly (1985),24 Ohio App.3d 211, 213-214, 494 N.E.2d 1160.
[5] Riston v. Butler, 149 Ohio App.3d 390, 2002-Ohio-2308,777 N.E.2d 857, at ¶ 12.
[6] Id.
[7] Id.
[8] Cf. Newman v. Castrucci (1988), 54 Ohio App.3d 166, 169-170,561 N.E.2d 1001 (upholding Civ. R. 11 sanctions against plaintiff's counsel where "the plaintiff, herself refuted many facts and every material allegation of the complaint filed by her attorney"); Harris v. SouthwestGeneral Hosp. (1992), 84 Ohio App.3d 77, 616 N.E.2d 507 (upholding Civ. R. 11 sanctions against a plaintiff and her counsel where record demonstrated that "plaintiff's complaint was groundless and the discovery tactics of plaintiff and her counsel were designed to obfuscate and to forestall truth finding").
[9] Section 227(b)(1)(C), Title 47, U.S. Code.
[10] Section 227(a)(4), Title 47, U.S. Code.
[11] Section 227(b)(3), Title 47, U.S. Code.
[12] Bransky v. Shahrokhi, 8th Dist. No. 84262, 2005-Ohio-97, at ¶ 6.
[13] See, e.g., Carey, Fax Blasting at the OK Corral: Is the FCC Shooting from the Hip? (2005), 18 Loy.Consumer L.Rev. 1, 12 (noting that "[a]n interesting and complex issue is who can sue and who can be sued under the TCPA. Technically, it is the receiver of the fax that has standing to sue, [which] can create complex issues in a corporate setting which have yet to be answered").
[14] Although it is now questionable whether Radvansky would have standing under the OCSPA based on the Ohio Supreme Court's decision inCulbreath v. Golding Enterprises, 114 Ohio St.3d 357, 2007-Ohio-4278,872 N.E.2d 284, at ¶ 21-32, that case had not been decided at the time that Radvansky had filed her complaint.
[15] See Kopff v. World Research Group, LLC. (Aug.1, 2008), D.D.C. No. 03-1747.
[16] See Goldberg v. Empire Mtg. Inc. (Dec. 7, 2004) Franklin C.P. No. 04CVH03-3435; Dawson v. American Dream Homes (July 10, 2006), Lake C.P. No. 06CV000513. *Page 1