## KROGER GROCERY & BAKING CO v McCUNE

Ohio Appeals, 2nd Dist, Franklin Co

No 2319.  Decided Aug 9, 1933

Joseph F. Hogan, Columbus, for plaintiff in error.

Hamilton & Kramer, Columbus, and Arthur W. Wiles, Columbus, for defendant in error.

## OPINION

By BARNES, J.

Herbert L. Budd, a son and witness for the plaintiff, Mrs. McCune, gave evidence, ove the objections of the defendant, that late in the evening following the accident he had a conversation with Mr. Malehorn, the manager, in which the manager narrated to him as to how the accident happened and made the request that nothing be said about the basket, because they were not supposed to have it there. Mrs. McCune also testified that upon different occasions the manager, Mr. Malehorn, made certain admissions to her and generally wound up requesting that she say nothing about the basket and so forth. We think this evidence should not have been presented, as it is highly prejudicial. Mr. Malehorn, the manager, so far as the record discloses was not an officer of the company. Any statements that he may have made on the evening following the accident or later could not be presented under the theory of res gestae; neither would it be admissible as a declaration against interest, since a manager would have no authority to make any admissions detrimental to the interests of his employer. Of course, the manager could and should testify to the truth when called upon as a witness, and, further, when called as a witness he may be inquired of as to whether or not he made statements at any time contrary to testimony that is then given. In other words, if material the ground may be laid for impeachment and thereafter in rebuttal winesses may be called to furnish the impeaching testimony. This impeaching testimony would only affect the credit of the witness Malehorn, but would not be substantive evidence of any act of negligence.

There is nothing so prejudicial in the eyes of a jury as where there is presented to them evidence of a party in authority who is seeking to suppress evidence. To the jury's mind this at once is an admission of wrong doing and a willingness and effect to keep the truth from coming out.

Apparently counsel for plaintiff relies on the case of **Woolworth & Company v Sexton, 39 Oh Ap, 119, (10 Abs 574)**, as authorizing evidence of this character. This was a Franklin County case and is a decision by the Court of Appeals of this district. The writer of this opinion was not a member of the court at that time, but my two associates were members of the court when that opinion was announced, the same being written by Judge Hornbeck. An examination of the Woolworth case discloses that the statement was made by the manager immediately following the accident, and thereby might have been proper as a part of the res gestae. However, the court held admissibility of the evidence proper as showing knowledge on the part of the manager as to the condition of the oiled floor immediately before the accident. The court as now constituted is unanimous in the conclusion that the reasoning announced in the Woolworth case can not be given application in the instant case for the reason that the situation is not at all analagous. Attention is called to **Volume 17, Ohio Jurisprudence (Evidence), §289**, and notes thereunder, which very clearly sets forth the Ohio rule. §255 is also in point.

Counsel for Grocery Company give major attention to the claim that the trial court should have directed a verdict against the plaintiff below. This ground of error is properly presented.

The obligation of owners of stores to their patrons is very clearly set out in the case of **Kresge Company v Faber, 116 Oh St, 718:**

"Syllabus 1. Owners or lessees of stores owe a duty to the patrons of the store to exercise ordinary care to prevent accident and injury to the patrons while in the store, but they are not insurers against all accidents and injuries to such patrons

while in the store."

The general rule affecting knowledge of defect or a dangerous condition and which we think to be the Ohio rule will be found in **Corpus Juris, Volume 45 (Negligence), §245:**

"**Knowledge of Defect or Danger.** In order to impose liability for injury to an invitee by reason of the dangerous condition of the premises, the condition must have been known to the owner or occupant or have existed for such time that it was the duty of the owner or occupant to know of it."

In the instant case since there was no evidence that the employees in the Kroger store knew of the presence of the lettuce leaf on the floor at the time of or before the accident, nor any evidence as to the length of time it had been there before the accident, there is an absolute failure of knowledge, either actual or constructive, under the general rules above announced. If the above general rule is to be followed, it is obvious that the plaintiff must fail.

A further rule is invoked which has little if any expression from Ohio courts. In substance it may be stated to be that where the dangerous substance has a nexus with the business an inference will arise that the danger is brought about through the operation of the business and thereby creates liability. As applied to the facts in the instant case it would mean since the Kroger Grocery Company handled lettuce, the inference arises that the lettuce leaf upon which Mrs. Mc-Cune slipped was on the floor through the operation of the store's business and the Kroger Company would be liable without any proof as to how it got onto the floor or how long it had been there. It was upon this principle that the trial court overruled motion for new trial and entered judgment. The case of **Lowe v The Hippo-drome Inn Company, 30 Oh Ap, 520 (6 Abs 641),** was the Ohio authority upon which the trial court based its conclusion. The opinion in this case was rendered by Judge Sullivan of the Court of Appeals of Cuyahoga County, and shows a splendid analysis and clear expression of the question involved. The determination was against liability. On page 523 of the opinion the following language is used:

"In other words, its character, standing alone as it does, has no nexus with the restaurant itself, or its operation, and as reasonable an inference as any other is that its existence was due to an act wholly disconnected from the operation of the restaurant, and due solely to some cause foreign to the operation of the establishment."

This was only one of many reasons set forth by the court as to why the plaintiff was not entitled to recover. It is not the equivalent of a finding that if the evidence had disclosed a "nexus" there would have been a liability. This word "nexus" is new in legal phraseology, but as used by Judge Sullivan in the Lowe case, supra, it was very expressive of the idea intended to be conveyed. We know of no other case where the word has been used but for the purpose of brevity in expression we will hereafter refer to this principle as the nexus theory.

**Woolworth v Kinney, 121 Oh St, 462,** is cited as supporting the contention of plaintiff below. As we read this reported case it is not based at all upon the "nexus" theory, although the question is properly in the case if the court had desired to follow it. In this Woolworth case a customer of a store slipped on a piece of candy and was injured. Evidence was presented that one or two days previous another person had slipped at or near the same place. This latter evidence was in support of the claim of plaintiff in her petition that the candy had been permitted to remain upon the floor such length of time as would charge them with notice. In the dissenting opinion Judge Marshall states that the jury must have found these facts to exist as otherwise they could not have returned a verdict for the plaintiff. If the nexus theory of law was under discussion of the Supreme Court it is hardly probable that Judge Marshall would have used the language set out in the dissenting opinion.

Counsel for claimant in their brief present the illustration of where an employee carried oil across the floor in a leaky can and thus creates a slippery condition, that the owner of the store should not be permitted to say that they did not know of the condition since it was an incident in the operation of the store.

This illustration would present a direct operation of an employee and if he knew of the leaky can this would be a direct negligent act if it created an unsafe condition on the floor. If he did not know of the leaky can, the question would arise as to whether or not because of his close

contact with the operation he should have known of the condition. We have carefully examined the cases submitted by counsel for defendant in error in support of their so-called nexus theory, but we think each and every case is readily distinguishable from the case at bar.

For instance, in those cases such as the slippery ramp, or the moving truck in the aisle, or the splinter in the floor, there would be evidence of a continuous condition which, in the exercise of ordinary care, would have been known and corrected, or a direct moving force which would demand that the employee should exercise a high degree of care in not injuring customers in aisles of stores.

Another well recognized principle of law that in order to create liability for a slip and fall on some substance on a floor, there can not be a claim of want of ordinary care unless it could be shown that the substance on the floor responsible for the slip and fall was known to have qualities which would make it dangerous to persons coming in contact with it. The only evidence disclosed in the record on the question of the dangerous quality of a leaf of lettuce is the inference that might be drawn from the fact that the plaintiff, Mrs. McCune, did slip and fall thereon. It is probably true that the dangerous qualities of some substances is a matter of common knowledge, and in that instance no evidence would be necessary other than the evidence of the offensive substance upon which claimant slipped. Such would be the case in stepping on a wet piece of soap, greasy meat, tallow, banana peel and other substances of that character. It cannot be said that it is a matter of common knowledge that a scrap of lettuce leaf about the size of a half dollar was as a matter of common knowledge a dangerous substance. We do not think that it can be said that it is a matter of common knowledge that such substance would have dangerous qualities.

Of course, the banana skin which plaintiff claimed to be in close proximity to the location of her fall would be as a matter of common knowledge a dangerous thing to step on. But there is no claim that she did step on the banana skin, and furthermore there would be no probability of the banana skin being on the floor as an incident of the business of the Kroger Company. They may and probably do sell bananas, but they are not generally sold to be eaten on the premises. The presence of this refuse of a banana would, in all probability, be the act of a child and one of such tender years as to be unmindful of potential danger in leaving the skin on the floor.

The bunch of celery also seen by plaintiff on the floor near the point of her accident, is hard to understand, unless knocked from its displayed position by plaintiff's foot coming in contact with the vegetable basket after her slip and fall. It would be hard to understand how any employee or clerk would drop a bunch of celery and not know of it and pick it up at that very instant. Of course, it was not at that particular location for display and sale. If we indulge in inferences, we are inclined to the belief that it is just as inferable that the bunch of celery was dropped by some excited customer immediately following the fall. The only purpose of the evidence relative to other substances on the floor aside from the lettuce leaf would be to show negligence in permitting general debris to be present in the aisle where people walk. Our analysis of the evidence touching the banana skin and the bunch of celery brings to our mind the conclusion that their presence was more readily explainable upon other theories than the action or inaction of the management of the store.

Under the state of the record in this case to hold the Kroger Company liable would be the equivalent of saying that the owners of stores are insurers of the safety of their customers whenever it be shown that a substance upon which a customer slips had a nexus with the operation of the store. We are unable to think that Ohio courts would desire to go that far in their announcement of the law.

It is our conclusion that the trial court was in error in not sustaining defendant's motion to direct a verdict at the close of plaintiff's testimony and renewed at the close of all the testimony. This court now entering the judgment which should have been entered below, enters final judgment against the plaintiff and at her costs.

HORNBECK, PJ, and KUNKLE, J, concur in judgment.

Rehearing denied Aug. 30th, 1933.