[Cite as *Semco, Inc. v. Sims Bros., Inc.*, 2013-Ohio-4109.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

SEMCO, INC.,

    PLAINTIFF-APPELLANT,                          CASE NO. 9-12-62

    v.

SIMS BROS., INC., ET AL.,                        O P I N I O N

    DEFENDANTS-APPELLEES.

---

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 09-CV-0218**

**Judgment Affirmed**

**Date of Decision: September 23, 2013**

---

APPEARANCES:

    *J.C. Ratliff and Adam H. Karl* for Appellant

    *Jasper N. Burt and Keith Shumate* for Appellee, Sims Bros., Inc.

**PRESTON, P.J.**

{¶1} Plaintiff-appellant, Semco, Inc. ("Semco"), appeals the Marion County Court of Common Pleas' October 12, 2011 and November 2, 2012 judgment entries. In its October 12, 2011 judgment entry, the trial court granted summary judgment in favor of defendant-appellee, Sims Bros., Inc. ("Sims Bros."), concluding that Sims Bros. was entitled to summary judgment on Semco's conversion claim because Semco failed to demand return of its property and on its civil-theft claim because no issue of fact existed as to whether Sims Bros. knew or had reasonable cause to believe that the property was stolen. In its November 2, 2012 judgment entry, the trial court granted Sims Bros.'s motion for attorney fees on Semco's dismissed Consumer Sales Practices Act ("CSPA") claim, awarding Sims Bros. its requested attorney fees of $26,130. For the reasons that follow, we affirm.

{¶2} This case involves a dispute between a foundry, Semco, and a metal recycler, Sims Bros. It stems from the repeated thefts of Semco's metal materials by two of its employees, and the thieves' sale of those materials at Sims Bros.'s drive-through recycling center. (Doc. Nos. 80, 83).

{¶3} On March 17, 2009, Semco filed a complaint against Sims Bros. and two other metal-recycler defendants who settled with Semco and are not parties to this appeal. (Doc. Nos. 1, 121, 122). Semco's complaint contained four counts:

violation of the CSPA under R.C. 1345.01 et seq.; civil theft under R.C. 2913.61, based on a theory of receiving stolen property; conversion; and, unjust enrichment. (*Id.*). Sims Bros. filed its answer on May 8, 2009. (Doc. No. 7).

{¶4} On August 21, 2009, Sims Bros. and the other two defendants filed a joint motion for judgment on the pleadings as to all of the counts of the complaint. (Doc. No. 13). Semco did not respond to that motion and instead moved for leave to file an amended complaint. (Doc. No. 15). Three days later, the trial court granted Semco's motion for leave to file an amended complaint and noted that the defendants could renew their motion for judgment on the pleadings after Semco filed its amended complaint. (Doc. No. 16).

{¶5} Semco filed its amended complaint on October 2, 2009. (Doc. No. 17). In it, Semco included additional factual allegations and the same four counts as it did in its original complaint. (*Id.*). On October 30, 2009, Sims Bros. and the other two defendants filed a joint motion to dismiss the CSPA and unjust-enrichment counts. (Doc. No. 20). Also on that day, Sims Bros. filed its answer to Semco's amended complaint. (Doc. No. 21). Semco opposed the defendants' joint motion to dismiss on November 20, 2009, and the defendants filed a reply in support on December 10, 2009. (Doc. Nos. 24, 26). On January 26, 2010, the trial court granted the defendants' motion to dismiss the CSPA and unjust-enrichment counts. (Doc. No. 28).

{¶6} On February 16, 2010, Sims Bros. moved pursuant to R.C. 1345.09(F)(1) for attorney fees that it incurred in defending against Semco's CSPA claim. (Doc. No. 32). Semco opposed the motion, and Sims Bros. filed a reply in support. (Doc. Nos. 37, 41). The trial court did not rule on Sims Bros.'s motion.

{¶7} On August 19, 2011, Sims Bros. moved for summary judgment on the remaining counts in Semco's amended complaint—civil theft and conversion. (Doc. No. 80). Semco filed its opposition to Sims Bros.'s motion on September 6, 2011.[1] (Doc. No. 83).

{¶8} On September 14, 2011—nine days after the date by which Semco was to file its response to Sims Bros.'s motion—Semco filed a motion for leave to file an affidavit in support of its memorandum in opposition to Sims Bros.'s motion for summary judgment. (Doc. No. 103). The affidavit was of Dennis Potts, a private investigator who interviewed three Sims Bros. employees—Otis Britton, Hibbard Smith, and Chad Rayburn—who were present when, on multiple occasions, the metal materials were brought to Sims Bros. for sale. (Potts Aff., Doc. No. 103, attached). Potts attached to his affidavit investigation reports that

---

[1] The trial court ordered that Semco file its response to the Sims Bros.'s motion for summary judgment "on or before September 5, 2011." (Doc. No. 76). Attached to Semco's memorandum in opposition to Sims Bros.'s motion for summary judgment was a certificate of service certifying that Semco's counsel served opposing counsel with the memorandum in opposition on September 2, 2011. (Doc. No. 83). While it is the responsibility of the filer, not the clerk of courts, to ensure that a document is timely filed, we do not address in this appeal the timeliness or untimeliness of Semco's memorandum in opposition because that issue is not before this Court.

he prepared after interviewing Britton, Smith, and Rayburn. (*Id.*). In the investigation reports, Potts documented statements by Britton and Smith that they believed the materials may have been stolen, and statements by Rayburn that the materials included finished copper products known as plunger tips. (*Id.*).

{¶9} On September 16, 2011, Sims Bros. filed its reply in support of its motion for summary judgment. (Doc. No. 106). A week later, Sims Bros. filed a memorandum in opposition to Semco's motion for leave to file Potts' affidavit. (Doc. No. 107). On September 29, 2011, Sims Bros. filed a "supplemental submission" in opposition to Semco's motion for leave after deposing Semco's damages expert witness that day. (Doc. No. 109). Also that day, Semco filed its reply in support of its motion for leave. (Doc. No. 111). The next day, Sims Bros. filed supplemental authority in support of its motion for summary judgment. (Doc. No. 113). On October 5, 2011, Semco filed memoranda in opposition to Sims Bros.'s "supplemental submission" and supplemental authority. (Doc. Nos. 115, 116).

{¶10} On October 12, 2011, the trial court issued its judgment entry granting Sims Bros.'s motion for summary judgment. (Doc. No. 120). The trial court concluded that Semco's admitted failure to demand return of the stolen materials sold to Sims Bros. by Semco employees was fatal to its conversion claim. (*Id.*). As for Semco's civil-theft claim, the trial court "considered the

[Potts] affidavit and its contents despite the fact that the affidavit was, to say the least, untimely filed" and concluded that it contained "nothing more than hearsay-opinion statements from the three Sims Bros.'s employees which directly contradict their sworn testimony contained in their depositions." (*Id.*). Given its contents, the trial court said Semco could not use Potts' affidavit to create an issue of fact. (*Id.*). The trial court therefore issued summary judgment in Sims Bros.'s favor. (*Id.*).

{¶11} On November 3, 2011, Semco filed a notice of appeal. (Doc. No. 123). We dismissed that appeal on January 6, 2012 for want of jurisdiction because the trial court's summary judgment entry did not resolve Sims Bros.'s motion for attorney fees that it filed on February 16, 2010. (June 4, 2012 Tr. at 4). Following our dismissal of that appeal, the trial court held a hearing on Sims Bros.'s motion on June 4, 2012. (*Id.*); (Doc. No. 128). On November 2, 2012, the trial court granted Sims Bros.'s motion and awarded it $26,130 in attorney fees under R.C. 1345.09(F). (Doc. No. 129).

{¶12} Semco filed a notice of appeal on November 29, 2012, appealing the trial court's October 12, 2011 summary judgment entry and its November 2, 2012 entry granting Sims Bros.'s motion for attorney fees. (Doc. No. 133). Semco raises three assignments of error for our review.

## Assignment of Error No. I

**The trial court erred in granting defendant-appellee Sims Bros., Inc's [sic] motion for summary judgment when there were numerous genuine issues of material fact as to whether Sims Bros., Inc. knew or had reason to know the Semco materials that it purchased were stolen.**

{¶13} In its first assignment of error, Semco argues that the trial court erred when it granted summary judgment in favor of Sims Bros. on Semco's civil-theft claim. The trial court concluded that the "central element" of Semco's civil-theft claim—"that Sims [Bros.] knew, or reasonably could have known, that the materials at issue were stolen"—was not present. The trial court considered the affidavit of private investigator Dennis Potts, "despite the fact that the affidavit was, to say the least, untimely filed," but concluded that it was "replete with hearsay statements" and, therefore, "useless in defending a motion for summary judgment." (Doc. No. 120). Specifically, the trial court concluded that Sims Bros.'s employees' statements contained in Potts' investigation reports attached to his affidavit were not admissions of a party-opponent under Evid.R. 801(D), because they were opinion statements and admissions of liability against their employer and, therefore, outside the scope of their employment. The trial court also noted that the statements contradicted the employees' sworn deposition testimony. Semco argues that the employees' statements in Potts' investigation

reports were factual assertions, not opinions, made within the scope of employment.

{¶14} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶15} Through a trail of statutes, Ohio law provides for a civil action based on the crime of receiving stolen property. "Under R.C. 2307.60(A)(1), any person who has been injured by a criminal act may bring a civil action to recover damages." *Commonwealth Land Title Ins. Co. v. Choice Title Agency, Inc.*, 9th Dist. Lorain Nos. 11CA009981 and 11CA009983, 2012-Ohio-2824, ¶ 21. R.C. 2307.61 allows a property owner who brings a civil action under R.C. 2307.60(A) "to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property * * *." R.C. 2307.61(A). R.C. 2913.01 defines theft offenses to include violations of R.C. 2913.51, the receiving-stolen-property statute. R.C. 2913.51(A) provides, "[n]o person shall receive, retain, or

dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶16} In a criminal receiving-stolen-property case, this Court listed the factors a court may consider in determining whether reasonable minds could conclude that the defendant knew or should have known the property was stolen:

> (a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise.

*State v. Adams*, 3d Dist. Defiance No. 4-09-16, 2009-Ohio-6863, ¶ 9, quoting *State v. Davis*, 49 Ohio App.3d 109, 112 (8th Dist.1988). We also quoted Ohio Jury Instructions' directives to jurors for determining whether a defendant had reasonable cause to believe property was stolen:

> [i]n determining whether the defendant had reasonable cause to believe that the property was obtained through a theft offense you must put yourself in the position of this defendant with his/her knowledge, or lack of knowledge, and under the circumstances and conditions that surrounded him/her at that time. You must consider the conduct of the persons involved and determine if their acts and

words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense.

*Id.*, quoting *2 Ohio Jury Instructions*, CR Section 513.51 (2009).

{¶17} The key inquiry presented by Semco's first assignment of error is whether there is a genuine issue of material fact as to whether Sims Bros. knew or had reasonable cause to believe that the materials the thieves sold to Sims Bros. were stolen. After reviewing the record and viewing the evidence in a light most favorable to Semco, we conclude that summary judgment in favor of Sims Bros. on Semco's civil-theft claim was appropriate because there was no genuine issue of material fact concerning that question.

{¶18} At its drive-through recycling center in Marion, Sims Bros. receives a variety of scrap metals from a variety of sources. (Sims Depo. at 27-28). Although not as frequently as other types of scrap metal, Sims Bros. occasionally receives scrap metal, such as copper castings, originating from foundries—for example, if someone is cleaning out a foundry. (*Id.* at 28); (Britton Depo. at 49-53); (Smith Depo. at 38-40). One of the thieves—Jeff Dolick—volunteered that they were in town cleaning out a foundry and would be bringing in the scrap metal. (Rayburn Depo. at 66, 70). Dolick's vehicle had Indiana license plates, and his story "made sense." (Rayburn Depo. at 66, 70). (*See also* Britton Depo. at

50); (Smith Depo. at 47). The thieves stole and sold the materials between February and July 2008, before getting caught on July 8, 2008. (Tennar Depo. at 6, 127); (Dolick Depo. at 8-9).

{¶19} Britton and Smith testified that they did not suspect the materials were stolen. (Britton Depo. at 49); (Smith Depo. at 47). Rayburn testified that although he initially suspected the materials may have been stolen, after consulting with Britton and Smith, he no longer believed they were. (Rayburn Depo. at 70). Smith testified in his deposition that the materials looked like scrap. (Smith Depo. at 38). (*See also* Rayburn Depo. at 37-45). Semco's finished plunger tips bear stamped "Semco" imprints that cannot be removed without grinding them. (Tennar Depo. at 91, 151). However, the materials that Britton, Smith, and Rayburn saw did not bear any identifying marks, such as the "Semco" imprint. (Britton Depo. at 63); (Smith Depo. at 59); (Rayburn Depo. at 95). Nor were the materials the type that Sims Bros. automatically rejects—such as kegs, grave markers, and railroad material—or the type of which Sims Bros. is suspicious— such as new material. (Sims Depo. at 31); (Fischer Depo. at 62); (Smith Depo. at 53); (Britton Depo. at 49); (Rayburn Depo. at 37-45). Dolick did not steal finished materials or materials bearing identification marks, such as a "Semco" stamp. (Dolick Depo. at 10). Sims Bros. received no alerts from Semco or law

enforcement authorities to be on the lookout for stolen Semco materials. (Furman Depo. at 29-30).

{¶20} Applying the factors this Court listed in *Adams*, (a) one of the thieves explained their possession of the materials, and his story "made sense" to the Sims Bros. employees; (b) to at least one Sims Bros. employee, the materials appeared to be scrap metal, and the materials did not appear to be finished product bearing the "Semco" imprint; (c) Sims Bros. occasionally receives foundry-type materials at its recycling center; (d) Sims Bros. operates a drive-through recycling center, at which they receive a variety of scrap metals from a variety of sources; and, (e) the thieves stole and sold materials to Sims Bros. for approximately five months before getting caught. *See Adams*, 2009-Ohio-6863, at ¶ 9. Weighing the facts above and these factors, there was no genuine issue of material fact that Sims Bros. did not know and had no reasonable cause to believe that the materials were stolen. Semco has not directed us to any Civ.R. 56 evidence that creates a genuine issue of material fact.

{¶21} Semco argues that Potts' affidavit creates genuine issues of material fact. The trial court considered Potts' affidavit but concluded that it contained inadmissible hearsay, which cannot be used to defeat summary judgment.[2] *Hall v.*

---

[2] Sims Bros. argues that Potts' affidavit is not part of the record because the trial court never granted Semco's motion for leave to file it. We disagree. By considering Potts' affidavit, the trial court implicitly granted Semco leave to file it. *Price v. Price*, 3d Dist. Hancock No. 5-86-19, 1987 WL 1363642, *12 (Mar.

*Fairmont Homes, Inc.*, 105 Ohio App.3d 424, 436 (4th Dist.1995) ("Affidavits based on hearsay evidence are not admissible for the purposes of summary judgment."), citing *Pond v. Carey Corp.*, 34 Ohio App.3d 109 (10th Dist.1986); *Pennisten v. Noel*, 4th Dist. Pike No. 01CA669, 2002 WL 254021, *2 (Feb. 8, 2002). Potts' affidavit and the investigation reports attached to it contain multiple alleged statements by Sims Bros. employees, which we address in turn.

{¶22} In his affidavit, Potts averred that Britton, Smith, and Rayburn made certain statements to him. Several of these statements concerned the frequency with which the thieves visited Sims Bros. and the quantities the thieves sold to Sims Bros. (Potts Aff. at ¶ 7, 8, 10, 11, Doc. No. 103, attached). Potts also averred that Rayburn told him that Sims Bros. owner Scott Fischer initially graded some of the materials that the thieves produced for sale. (*Id.* at ¶ 10). The investigation reports attached to Potts' affidavit contain similar statements allegedly made by Britton, Smith, and Rayburn concerning the frequency of visits, quantities of materials, and Fischer's grading involvement. (*Id.* at Investigation Reports).

{¶23} Even assuming these statements in Potts' affidavit and investigation reports were admissible—such that the trial court could have considered them in deciding whether to grant Sims Bros.'s motion for summary judgment—they are

---

13, 1987) ("[T]here is a presumption that a final judgment resolves all pending motions where the relief sought in those motions is implicitly granted or denied by the final judgment.").

not inconsistent with the facts above warranting summary judgment, and they do not create a genuine issue of material fact concerning whether Sims Bros. knew or had reasonable cause to believe the materials were stolen. Individuals cleaning out a shop, warehouse, or foundry occasionally make multiple trips to the Sims Bros. drive-through, bringing in high volumes of materials for sale. (Smith Depo. at 39-40); (Britton Depo. at 48-53). As for Fischer, he simply graded the materials as "copper no. 2"—something less than 100 percent pure copper—during one of the thieves' visits to the drive-through, and there is no indication he knew or had reasonable cause to believe the materials were stolen. (Rayburn Depo. at 60-61).

{¶24} Potts also averred and stated in the investigation reports that when he showed Rayburn sample Semco materials, Rayburn twice told him that Sims Bros. purchased "new plunger tips" or "new tips" from the thieves. (*Id.* at ¶ 10, 11, Investigation Reports). Again, even assuming these statements by Rayburn were admissible, they do not create a genuine issue of material fact. No photographs or descriptions of the "new plunger tips" or "new tips" are attached to or contained in Potts' affidavit and investigation reports.[3] However, in his deposition, Rayburn— using photographs marked as Plaintiff's Exhibit 2—identified the materials that Sims Bros. purchased from the thieves. (Rayburn Depo. at 37-45). Among them were plunger tips with coarse exteriors and no threading or holes in them. (*Id.* at

---

[3] Semco attached to its memorandum in opposition to Sims Bros.'s motion for summary judgment several unsworn and unauthenticated materials, including the investigation reports and accompanying compact disc. However, Potts did not attach the compact disc to his affidavit, and we do not consider its contents.

42, 45). Semco did not come forth with admissible evidence, such as authenticated photographs, identifying or describing the "new plunger tips" and "new tips" that Potts showed Rayburn. In other words, Semco failed to demonstrate that "new plunger tips" and "new tips" were different than the plunger tips that Rayburn identified in his deposition. Therefore, even assuming they were admissible, Rayburn's statements, as restated by Potts, do not create a genuine issue of material fact.

{¶25} Finally, Potts averred and stated in the investigation reports that Britton and Smith told him that they thought the materials were stolen or may have been stolen. (*Id.* at ¶ 9, 12, Investigation Reports). Even assuming the investigation reports were admissible, we agree with the trial court that these statements by Britton and Smith, as restated by Potts, are inadmissible hearsay that cannot be used to defeat summary judgment.

{¶26} Under Evid.R. 801(D)(2)(d), "[a] statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship * * *." *See Shumway v. Seaway Foodtown, Inc.*, 3d Dist. Crawford No. 3-97-17, 1998 WL 125555, *2 (Feb. 24, 1998), citing Evid.R. 801(D)(2)(d). Admissions of liability against an employer, including statements of opinion regarding liability, are not within an

employee's scope of employment and are therefore inadmissible under Evid.R. 801(D)(2)(d). *Johnson v. United Dairy Farmers, Inc.*, 1st Dist. Hamilton No. C-940240, 1995 WL 96853, *3 (Mar. 8, 1995), citing *Stormont v. New York Cent. R. Co.*, 1 Ohio App.2d 414, 419 (10th Dist.1964) and *Kroger Grocery & Baking Co. v. McCune*, 46 Ohio App. 291, 294 (2d Dist.1933). However, factual assertions made by an employee within his or her knowledge and scope of employment are admissible. *Cordle v. Bravo Dev., Inc.*, 10th Dist. Franklin No. 06AP-256, 2006-Ohio-5693, ¶ 16.

**{¶27}** The party claiming admissibility under Evid.R. 801(D)(2)(d) bears the burden of showing that the statement concerned a matter within the scope of the declarant's employment. *Pennisten*, 2002 WL 254021, at *2 (citations omitted); *Brock v. Gen. Elec. Co.*, 125 Ohio App.3d 403, 409-410 (1st Dist.1998). "Absent evidence that the statement concerned a matter within the scope of the declarant's duties, the statement is not admissible." *Pennisten* at *2, citing *Shumway*.

**{¶28}** Here, Britton's and Smith's statements were ones of opinion regarding liability. (Potts Aff. at ¶ 9 ("Mr. Smith stated that *he thought* the copper materials that were being brought in for sale were stolen but he was not sure where they were coming from." (emphasis added)); (*Id.* at ¶ 12 ("Mr. Britton advised that *he thought* the Semco materials that were brought in for sale to Sims may have

-16-

been stolen from a foundry but did not know of any around here." (emphasis added)); (*Id.* at Investigation Reports ("[Smith] stated *he thought* these items were stolen but not sure where they came from." (emphasis added); "Mr. Britton advised that *he thought* they may be stolen from a foundry but did not know of any around here." (emphasis added)). Accordingly, Evid.R. 801(D)(2)(d)'s hearsay exemption does not apply to these statements. They are inadmissible hearsay and do not create a genuine issue of material fact precluding summary judgment. *See Johnson* at *3 (classifying as inadmissible "statements of opinions regarding liability" an employee's statements that a newspaper rack was in "a bad location" and that "she was afraid somebody else would" sustain an injury); *Pennisten* at *1-2 (holding that the trial court did not err by striking paragraphs in an affidavit containing hearsay statements of an employee concerning the dangerous placement of a machine).

{¶29} For these reasons, the trial court did not err in granting summary judgment in favor of Sims Bros. on Semco's civil-theft claim. Semco's first assignment of error is therefore overruled.

**Assignment of Error No. II**

**The trial court erred in granting defendant-appellee Sims Bros., Inc's [sic] motion for summary judgment on Semco's conversion claim.**

**{¶30}** In its second assignment of error, Semco argues that the trial court erred when it granted summary judgment in favor of Sims Bros. on Semco's conversion claim. The trial court concluded that summary judgment was warranted because Semco admitted it did not demand from Sims Bros. the return of the stolen materials, and it therefore could not prove an essential element of conversion. Semco argues that the trial court erred because the notice requirement of R.C. 2307.61 was not a prerequisite to Semco's filing suit, and because demanding the return of the materials would have been superfluous and was not required. As with the first, we review de novo this second assignment of error.

**{¶31}** "It is axiomatic that a party may not assert an issue for the first time on appeal." *Neville v. Neville*, 3d Dist. Marion No. 9-08-37, 2009-Ohio-3817, ¶ 14, citing *Gibson v. Gibson*, 3d Dist. Marion No. 9-07-06, 2007-Ohio-6965, ¶ 34. In its memorandum in opposition to Sims Bros.'s motion for summary judgment, Semco failed to assert its argument that R.C. 2307.61's notice requirement was not a prerequisite to Semco's filing its conversion claim. Because Semco asserts that argument for the first time on appeal, we need not consider it. *Id.* Even if we were to consider it, Semco's R.C. 2307.61 argument lacks merit because its conversion claim was a common-law claim, not a statutory one, so R.C. 2307.61 is not applicable. (*See* Doc. No. 17).

**{¶32}** Semco did argue below that demanding return of the materials would have been superfluous, so we address that argument. "Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Warnecke v. Chaney*, 194 Ohio App.3d 459, 2011-Ohio-3007, ¶ 15 (3d Dist.), quoting *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 592 (2001) (internal quotation marks omitted). "The elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Id.*, quoting *Miller v. Cass*, 3d Dist. Crawford No. 3-09-15, 2010-Ohio-1930, ¶ 32 (internal quotation marks omitted).

**{¶33}** "If the defendant came into possession of the property lawfully, the plaintiff must prove two additional elements to establish conversion: (1) that the plaintiff demanded the return of the property after the defendant exercised dominion or control over the property; and (2) that the defendant refused to deliver the property to the plaintiff." *Peirce v. Szymanski*, 6th Dist. Lucas No. L-11-1298, 2013-Ohio-205, ¶ 19, citing *R & S Distrib., Inc. v. Hartge Smith Nonwovens, L.L.C.*, 1st Dist. Hamilton No. C-090100, 2010-Ohio-3992, ¶ 23. *See also Marion Plaza, Inc. v. The Fahey Banking Co.*, 3d Dist. Marion No. 9-2000-59, 2001 WL 218434, *4 (Mar. 6, 2001) ("A demand and refusal in a conversion action are

usually required to prove the conversion of property otherwise lawfully held." (citation omitted)). "The object of the demand and refusal elements are to 'turn an otherwise lawful possession into an unlawful one, by reason of a refusal to comply * * *.'" *RFC Capital Corp. v. EarthLink, Inc.*, 10th Dist. Franklin No. 03AP-735, 2004-Ohio-7046, ¶ 61, quoting *Fidelity & Deposit Co. v. Farmers & Citizens Bank*, 72 Ohio App. 432, 434 (5th Dist.1943).

**{¶34}** We concluded above that there is no genuine issue of material fact that Sims Bros. neither knew nor had reasonable cause to believe that the materials the thieves sold to Sims Bros. were stolen. Because Sims Bros. did not know or have reasonable cause to believe that the materials were stolen, Sims Bros. came into possession of the materials lawfully, and Semco was required to establish the demand and refusal elements of conversion. *See Peirce*, 2013-Ohio-205, at ¶ 20 (holding that summary judgment was appropriate on appellant-jewelry owner's conversion claim because appellee-jewelry store did not know or have reason to believe the jewelry it purchased was stolen, and because appellant failed to produce evidence of demand and refusal). *See also State v. Jeantine*, 10th Dist. Franklin No. 09AP-296, 2009-Ohio-6775, ¶ 23 ("The gist of a theft offense is not the particular ownership of the property, but instead the 'wrongful taking.'"), citing *State v. Shoemaker*, 96 Ohio St. 570, 572 (1917).

{¶35} Semco does not argue that it demanded from Sims Bros. that it return the materials and that Sims Bros. refused. Indeed, no evidence in the record suggests that Semco made a demand and Sims Bros. refused. Because Semco did not introduce evidence establishing demand and refusal, the trial court properly granted Sims Bros. summary judgment on Semco's conversion claim. *See Peirce*, 2013-Ohio-205, at ¶ 20.

{¶36} Semco instead argues, without citing authority, that the demand and refusal elements did not apply because demand would have been "superfluous" and "futile" given the nature of the scrap metal business, where metal materials are processed, combined with other inventory, and sold. However, Semco's argument overlooks the legal significance of the demand and refusal elements. Because Sims Bros. did not know or have reasonable cause to believe that the materials were stolen, its possession of the materials—in whatever form—was not unlawful as long as Semco did not demand their return. Therefore, without a demand and refusal, there could be no conversion in this case.

{¶37} For these reasons, the trial court did not err in granting summary judgment in favor of Sims Bros. on Semco's conversion claim. Semco's second assignment of error is therefore overruled.

### Assignment of Error No. III

**The trial court erred in awarding defendant-appellee, Sims Bros. Inc. [sic], its attorney fees under R.C. 1345.09(F).**

-21-

{¶38} In its third assignment of error, Semco argues that the trial court erred when it awarded Sims Bros. $26,130 in attorney fees under R.C. 1345.09(F). Semco argues that its CSPA claim was not groundless, and it did not maintain the claim in bad faith—the prerequisites for a fee award under R.C. 1345.09(F)(1). Semco also argues that even if a fee award was appropriate under the statute, the amount of fees that the trial court awarded was excessive.

{¶39} The CSPA provides for the award of reasonable attorney fees to the prevailing party in an action brought under the CSPA if either of two circumstances apply:

> The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed and limited pursuant to section 1345.092 of the Revised Code, if either of the following apply:
>
> (1)  The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith;
>
> (2)  The supplier has knowingly committed an act or practice that violates this chapter.

R.C. 1345.09(F).

**{¶40}** "A trial court possesses discretion when determining whether to award R.C. 1345.09(F) attorney fees." *Davis v. Byers Volvo*, 4th Dist. Pike No. 11CA817, 2012-Ohio-882, ¶ 67, citing *Charvat v. Ryan*, 116 Ohio St.3d 394, 2007-Ohio-6833, ¶ 27 (additional citation omitted). *See also Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 86, citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990). "Absent an abuse of that discretion, the trial court's determination of attorney fees will not be disturbed on appeal." *Schneble* at ¶ 86, citing *Moore v. Vandemark Co., Inc.*, 12th Dist. Clermont No. CA2003-07-063, 2004-Ohio-4313, ¶ 26 and *Bittner v. Tri–County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). "An abuse of discretion implies that a trial court's attitude is unreasonable, arbitrary, or unconscionable." *Davis* at ¶ 67, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶41}** The trial court awarded Sims Bros. its attorney fees under R.C. 1345.09(F)(1). It concluded that Semco's CSPA claim was "groundless and did not come close to being able to survive a Rule 12(B)(6) motion," and that Semco's "continuation of the action by way of its amended complaint, after [Sims Bros.] had filed its 12(B)(6) motion, indicates bad faith." (Doc. No. 129). We agree with the trial court.

**{¶42}** We first address the "groundless" requirement of R.C. 1345.09(F)(1). The CSPA does not define "groundless," so we apply its ordinary and common

-23-

understanding. *See Culbreath v. Golding Ents., L.L.C.*, 114 Ohio St.3d 357, 2007-Ohio-4278, ¶ 22, citing R.C. 1.42. Black's Law Dictionary defines "groundless" as "lacking a basis or a rationale." *Black's Law Dictionary* 772 (9th Ed.2009). Thus, a claim is "groundless" if it lacks a legal or factual basis. *See id.*; *Palmer v. Daniel Troth & Son Builders, Inc.*, 10th Dist. Franklin No. 97APE08-1050, 1998 WL 255566, *5 (May 19, 1998). Here, we agree with the trial court that Semco's CSPA claim lacked a legal basis.

**{¶43}** "A violation of the CSPA is premised upon the existence of a 'supplier', a 'consumer', and a 'consumer transaction,' all of which are defined under the act." *DeRosa v. Elliott Leveling, Inc.*, 6th Dist. Lucas No. L-07-1148, 2008-Ohio-3502, ¶ 33, citing R.C. 1345.02 and 1345.03. The CSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, *to an individual* for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." (Emphasis added.) R.C. 1345.01(A). The Supreme Court of Ohio has held "that, as used in R.C. 1345.01(A), 'individual' means 'natural person.'" *Culbreath* at ¶ 26. A business entity, such as a corporation, is not a "natural person." *Id.* at ¶ 23-26.

**{¶44}** Here, Semco based its CSPA claim on a theory that because it was the owner of the materials that the thieves sold to Sims Bros., Semco "[stood] in

the shoes" of the thieves, who Semco said were "consumers" under the CSPA who engaged in "consumer transactions" with "supplier" Sims Bros. (Amended Complaint at ¶ 27, 33, 34, 42, Doc. No. 17). However, Semco's erroneous stand-in-the-shoes argument notwithstanding, a plaintiff must be a natural person, not a business entity, to maintain an action under the CSPA. *See Culbreath* at ¶ 26 ("We have declined to recognize Culbreath's right to maintain an action under the OCSPA based upon the fact that the law firm is not an 'individual' for purposes of the act."); *Anderson Law Office, LLC v. Esquire Deposition Services, LLC*, N.D.Ohio No. 1:09 CV 1909 (Mar. 31, 2011) ("Based on the *Culbreath* decision, the court determines that Plaintiff Anderson Law Office does not possess standing under the OCSPA."). Because Semco is a corporation—not a natural person—we agree with the trial court that Semco's CSPA claim was groundless for at least that reason.

{¶45} We next address the "bad faith" requirement of R.C. 1345.09(F)(1). The CSPA does not define "bad faith," so we apply its ordinary and common understanding. *See Culbreath* at ¶ 22, citing R.C. 1.42. Black's Law Dictionary defines "bad faith" as "[d]ishonesty of belief or purpose." *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, ¶ 8, quoting *Black's Law Dictionary* 159 (9th Ed.2009) (internal quotation marks omitted). The Supreme Court of Ohio has described "bad faith" as follows:

A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148 (1962), paragraph two of the syllabus, overruled on other grounds in *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994). *See also Palmer*, 1998 WL 255566, at \*6, quoting *Slater*.

{¶46} Here, Semco's original complaint included a CSPA claim. (Doc. No. 1). Sims Bros. and the other defendants moved for judgment on the pleadings under Civ.R. 12(C), requesting, in part, that the trial court dismiss Semco's CSPA claim because, among other reasons, Semco was not an "individual" who possessed standing to bring a CSPA claim. (Doc. No. 13). Sims Bros. and the other defendants cited *Culbreath* several times in their motion. (*Id.*). Instead of responding to the motion, Semco sought and was granted leave to file an amended complaint. (Doc. No. 16). Semco filed its amended complaint, which contained additional factual allegations and added paragraphs to Semco's CSPA count. (Doc. No. 17). Sims Bros. and the other defendants moved to dismiss the CSPA

claim, again citing *Culbreath* and other authorities. (Doc. No. 20). The trial court granted the motion to dismiss. (Doc. No. 28).

**{¶47}** The trial court concluded that Semco acted in bad faith when it included the CSPA claim in its amended complaint after the defendants filed their motion for judgment on the pleadings, bringing *Culbreath* and other authorities to Semco's attention.[4] We also note that Semco apparently knew it was not a party to a "consumer transaction" but included a CSPA claim in its amended complaint anyway, alleging that it "[stood] in the shoes" of the thieves.

**{¶48}** We find unpersuasive Semco's argument that its CSPA claim was not groundless because the trial court denied the defendants' joint motion for judgment on the pleadings. The trial court did not rule on the merits of the motion for judgment on the pleadings, but rather denied it and Semco's motion to hold it in abeyance pending a ruling on Semco's motion for leave to file its amended complaint. (Doc. No. 16). Indeed, the trial court informed the defendants that they could "renew their motion for judgment on pleadings after being served the amended complaint." (*Id.*).

**{¶49}** Based on these facts, the trial court could have determined that Semco acted with a dishonest purpose. It was not abuse of its discretion for the trial court to conclude that Semco filed its CSPA claim in bad faith. Accordingly,

---

[4] In reaching this conclusion, the trial court mistakenly referred to the defendants' motion for judgment on the pleadings, filed before Semco's amended complaint, as a "12(B)(6) motion." This apparent oversight does not impact our analysis.

the trial court did not abuse its discretion when it decided an attorney-fee award to Sims Bros. was appropriate.

**{¶50}** Nor did the trial court abuse its discretion in setting the amount of the attorney fee award. R.C. 1345.09(F) provides that a trial court "may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed." As with the decision of whether to award attorney fees, "the amount any such award pursuant to R.C. 1345.09(F) [is] left to the trial court's discretion." *Mansour v. Vulcan Waterproofing, Inc.*, 12th Dist. Butler No. CA99-09-150, 2000 WL 783069, *4 (June 19, 2000). *See also White v. Lima Auto Mall, Inc.*, 3d Dist. Allen No. 1-08-63, 2009-Ohio-411, ¶ 15. "Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *White* at ¶ 15, citing *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985). A trial court judge has "an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *White* at ¶ 16, citing *Brooks*, 23 Ohio App.3d at 91. *See also Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. Clermont No. CA2009-03-016, 2009-Ohio-4823, ¶ 11.

**{¶51}** "With regard to the reasonableness of the fee award, the Ohio Supreme Court has set forth a two-part process a trial court is to follow when determining the amount of fees to award the prevailing party." *Mike Castrucci*

*Ford Sales, Inc.* at ¶ 14, citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145 (1991). "Pursuant to *Bittner*, the trial court should first calculate the number of hours reasonably expended on the case multiplied by a reasonable hourly rate." *Id.*, citing *Bittner* at 145. The trial court "may then modify its initial calculation after applying the factors listed in DR 2-106(B)."[5] *Id.* at ¶ 15, citing *Bittner* at 145. Those factors include:

> the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent.

*Id.*, quoting *Bittner* at 145-146. "The trial court has the discretion to determine which factors to apply, and the manner in which the application of the factors will affect the [trial] court's initial calculation." *Id.*, citing *Bittner* at 146.

**{¶52}** As the trial court noted, at the hearing on Sims Bros.'s motion for attorney fees, counsel for Sims Bros. testified that his firm expended 75.2 hours of

---

[5] DR 2-106 of the Disciplinary Rules of the Code of Professional Responsibility has been replaced by Rule 1.5 of the Rules of Professional Conduct. "The factors contained in both the code and the professional rules are virtually identical." *Mike Castrucci Ford Sales, Inc.* at ¶ 15, fn. 2 (citation omitted).

attorney and paralegal time in defense of Semco's CSPA claim. (June 4, 2012 Tr. at 22). (*See also* D's Ex. 1). Given the attorney-fee award of $26,130, Sims Bros.'s counsel's average hourly rate equaled just over $340 per hour. The trial court concluded that the number of hours expended on the CSPA claim and the hourly rate, "[a]lthough on the high side," were reasonable. (Doc. No. 129). The trial court did not modify its initial calculation of $26,130, nor was it required to do so. *See Mike Castrucci Ford Sales, Inc.* at ¶ 15.

{¶53} Sims Bros.'s attorney-fee witness testified that the number of hours expended was "entirely reasonable," and that the hourly rate, although "towards the upper end" of the reasonable range, was reasonable. (June 4, 2012 Tr. at 55-58). Included in Sims Bros.'s counsel's work related to the CSPA claim were a joint motion for judgment on the pleadings and a joint motion to dismiss two counts of the amended complaint, including the CSPA claim. (*Id.* at 10-12, 55). The defendants, including Sims Bros., prevailed on their joint motion to dismiss the CSPA claim. (Doc. No. 28). Sims Bros.'s attorney-fee witness testified that the average hourly rate of over $340 was "on the higher range of the reasonableness scale" considering rates for "Columbus or central Ohio." (June 4, 2012 Tr. at 57). He considered central Ohio rates, not just Marion rates, in part because Semco was represented by two Columbus firms and one Marion firm. (*Id.* at 30). The $26,130 award represented approximately one tenth of the total

amount billed to Sims Bros. to defend it against Semco's four-count case. (*Id.* at 58). In its amended complaint, Semco requested $711,000, plus treble damages. (Doc. No. 17); (June 4, 2012 Tr. at 58).

{¶54} We reject Semco's argument that any attorney-fee award should not include fees incurred before September 25, 2009—the day the trial court granted Semco leave to file an amended complaint and denied the defendants' motion for judgment on the pleadings and Semco's motion to hold that motion in abeyance. (Doc. No. 16). Again, the trial court did not rule on the merits of the motion for judgment on the pleadings and instead invited the defendants to renew it after Semco filed its amended complaint. (*Id.*). Sims Bros. is not responsible for Semco's seeking leave to file an amended complaint.

{¶55} We cannot conclude that the trial court's decision to award Sims Bros. $26,130 in attorney fees was unreasonable, arbitrary, or unconscionable. The trial court did not abuse its discretion. Semco's third assignment of error is therefore overruled.

{¶56} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**